**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEMBELE SOULEYMANE,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00425-TWP-TAB |
| | ) | |
| SAMUEL OLSEN Chicago Field Office Director, | ) | |
| U.S. Immigration and Customs Enforcement, | ) | |
| Enforcement and Removal Operations, | ) | |
| TODD M. LYONS Director, U.S. Immigration and | ) | |
| Customs Enforcement, | ) | |
| KRISTI NOEM Secretary, U.S. Department of | ) | |
| Homeland Security, | ) | |
| PAMELA J. BONDI Attorney General of the | ) | |
| United States, | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT, | ) | |
| US DEPARTMENT OF HOMELAND | ) | |
| SECURITY, | ) | |
| RICHARD KELLY Clinton County Sheriff, | ) | |
| NATASHA DOUGLASS Clinton County Jail | ) | |
| Commander, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS</u>

This matter is before the Court on a Petition for Writ of Habeas Corpus filed by Noncitizen

Souleymane Dembele ("Demble"), asking the Court to order that he be immediately released from

detention. Dembele is subject to a final order of removal. However, the Board of Immigration

Appeals has chosen to stay his removal while it considers whether to reopen his removal

proceedings.

---

[1] Although the petitioner appears as "Dembele Souleymane" on the docket, the petition and the documents in the record refer to him as "Souleymane Dembele." The Court therefore does the same.

U.S. Immigration and Customs Enforcement ("ICE") officers arrested Dembele in February 2025, and he has been in custody continuously since that time. He is currently detained at the Clinton County Jail. Dembele asks the Court to order that he be immediately released from detention. For the reasons explained in this Order, the petition is **granted**, and the respondents will have **through March 25, 2026**, to certify that they have released Dembele.

## I. Facts

Dembele entered the United States with a visitor visa in July 2010. That visa expired in January 2011. (Dkt. 8-1 at 17). In 2013, law enforcement officers became aware that Dembele overstayed his visa. ICE officers arrested Dembele and initiated removal proceedings. *Id.*

In December 2014, Immigration Judge Steven Morley ordered that Dembele be removed to his native Mali. *Id.* at 1. The Board of Immigration Appeals (BIA) denied Dembele's appeal of that order in July 2016. *Id.* at 7–9.

Although he has been subject to a final removal order for nearly ten years, Dembele remains in the United States. In that time, he has moved multiple times to reopen his removal proceedings and applied for a visa. *See* dkts. 1-3, 1-4; dkt. 8-1 at 12–13. Dembele's most recent motion to reopen has been pending *since 2021*. (Dkt. 1-4).

Dembele has not been detained continuously since his removal order became final. As recently as February 2025, Dembele was free from custody but subject to a supervision program. When he reported to a supervision appointment, ICE officers arrested him for the purpose of removing him. (Dkt. 8-1 at 24). However, since March 25, 2025, he has been in custody based on ICE's determination that he is subject to a final order of removal.

On May 12, 2025, immigration officials attempted to remove Dembele to Mali. Dembele refused to board the plane. Rather than forcibly place Dembele on the plane, officers took Dembele

2

back into custody. ICE has notified Dembele that his refusal to submit to removal may result in criminal prosecution. Dkt. 8-1 at 3. There is no indication that any criminal charges have been initiated.

On May 20, 2025—after Dembele refused to submit to removal—the BIA stayed his removal so it could continue to consider his motion to reopen his removal case. (Dkt. 8-1 at 15). The motion to reopen remains pending, and the stay remains in effect. ICE reports that it "intends, and is prepared, to promptly remove" Dembele once the stay is lifted. (Dkt. 8-2 ¶ 9). However, no evidence provides any insight into when the motion to reopen is likely to be resolved.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Dembele argues that his detention is governed by 8 U.S.C. § 1231(a) and that his continued detention violates the Fifth Amendment as applied to § 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

The respondents answer that Dembele is lawfully detained under § 1231(a)(1)(C), which *Zadvydas* did not interpret; that Dembele's continued detention is lawful even if *Zadvydas* applies; and that, in any event, the Court lacks jurisdiction to review challenges to review decisions or actions to execute removal orders.

Whether *Zadvydas* applies in this case is complicated both by Dembele's refusal to submit to removal in May 2025 and by the BIA's stay of his removal a week later. In the following pages, the Court finds that it has jurisdiction to review Dembele's claim; that Dembele's detention is unlawful if analyzed under *Zadvydas*; and that *Zadvydas*'s due-process analysis must apply to the facts of this case.

3

### A.    Subject Matter Jurisdiction

Throughout their response, the respondents refer to three portions of 8 U.S.C. § 1252 and repeat that this Court lacks jurisdiction to review any challenge to Dembele's removal order or the decision whether to execute it. Dkt. 8 at 3 n.1; *id.* at 7. These provisions are § 1252(a)(1), which limits "judicial review of a final order of removal;" § 1252(b)(9), which limits "[j]udicial review" of issues "arising from any action taken or proceeding brought to remove an alien;" and § 1252(g), which limits review of claims "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."

The respondents' purpose in citing § 1252 is unclear. It is well-settled that the provisions the respondents cite do not bar judicial review of challenges to the lawfulness of detention while removal or removal proceedings remain ongoing.[2] The respondents acknowledge that Dembele "is not challenging the removal order" in this case. (Dkt. 8 at 3 n.1). Nor does he challenge any effort by the government to execute the removal order. Indeed, the government has stayed Dembele's removal while it decides whether to reconsider the removal order itself. Dembele seeks only to challenge his detention while he awaits removal—precisely the challenge that was permitted in *Zadvydas*. There is no jurisdictional barrier to Dembele's petition.

---

[2] *See, e.g.*, *Johnson v. Guzman Chavez*, 594 U.S. 523, 535, n.6 (2021) (Section 1252 "relates to judicial review of removal orders rather than detention."); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (Section 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to 'commence proceedings, adjudicate cases, or execute removal orders.'") (emphasis in original); *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000) ("Carrera wants review of his placement pending his transfer to another nation, and nothing in § 1252(g) precludes review of the decision to confine Carrera until then."); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (*His claim concerns detention while the administrative process lasts*, and it may be resolved without affecting pending proceedings. *Section 1252(g) therefore does not foreclose review*.") (emphasis added).

**B.**    *Zadvydas*'s Due Process Analysis

Before confronting the question of whether *Zadvydas* applies to this case, the Court reviews *Zadvydas* and finds that *Zadvydas*'s due-process analysis makes Dembele's continued detention unlawful if it applies here.

### 1.  8 U.S.C. § 1231(a)

The parties agree that any authority to detain Dembele must come from 8 U.S.C. § 1231, which authorizes detention of certain aliens subject to final removal orders. The statute applies two detention schemes—one compulsory and one discretionary—to two distinct time periods.

Section 1231(a)(1) establishes a 90-day "removal period." For purposes of this case, the removal period begins when the noncitizen's removal order "becomes administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). Section 1231(a)(1)(A) directs that "the Attorney General shall remove" a noncitizen ordered removed during the 90-day removal period. To facilitate that removal, § 1231(a)(2)(A) directs that the Attorney General "shall detain" the noncitizen during the removal period. If the Attorney General does not remove the noncitizen within the 90-day removal period, the noncitizen "*may* be detained beyond the removal period." 8 U.S.C. § 1231(a)(6) (emphasis added).

### 2.  *Zadvydas*

At face value, the text of § 1231(a)(6) authorizes the government to detain noncitizens who are subject to removal orders in perpetuity. But a "statute permitting indefinite detention of an alien," the Supreme Court wrote in *Zadvydas*, "would raise a serious constitutional problem." 533 U.S. at 690. This is because civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

5

The *Zadvydas* Court reconciled § 1231(a)(6) with the Fifth Amendment by interpreting § 1231(a)(6) as containing an implicit, constitutional limit on post-removal period detention authority. The statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Likewise, if detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700.

To aid courts in determining when removal is reasonably foreseeable, *Zadvydas* recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

### 3. Applying *Zadvydas* to Dembele's Detention

Assuming that *Zadvydas* applies to this case, Dembele's continued detention is unlawful. The analysis is straightforward.

Assuming that Dembele's removal period began when he was arrested on February 25, 2025, and ended 90 days later, he has been detained for nearly ten months since the removal period ended. As a result, the government is not entitled to a presumption that Dembele's detention is reasonable. *Zadvydas*, 533 U.S. at 700–01.

Dembele also has provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 700. At present, the government may not lawfully remove Dembele because the BIA has stayed his removal pending resolution of his motion to reopen his removal proceedings. That motion has been pending for *more than four years*,

and no evidence provides any specific reason to believe a decision is forthcoming. Dembele has therefore carried his burden of offering good reason to believe that his removal is not likely to occur reasonably soon.

The government, meanwhile, has not "respond[ed] with evidence sufficient to rebut" Dembele's showing that his removal is not likely to occur in the reasonably foreseeable future. The government's sole rebuttal evidence is an affidavit statement that the government is prepared to promptly remove Dembele once the stay is lifted. But that is not evidence that the stay is likely to be lifted in the reasonably foreseeable future. To that point, the government cites a Seventh Circuit decision noting in dictum that "judicial review of removal orders takes only a limited amount of time." Dkt. 8 at 6–7 (quoting *Hussain v. Mukasey*, 510 F.3d 739, 742 (7th Cir. 2007)). But that is not the factual posture of Dembele's removal order. The government itself—through the BIA—is deciding whether to review the removal order, and that process has already consumed more than four years. Lacking any specific evidence that the BIA is likely to complete its review and lift the stay by a particular time, the Court finds that Dembele's removal is not likely to occur in the reasonably foreseeable future.

## C.    Whether *Zadvydas* Applies

The Court has determined that, if *Zadvydas* applies to this case, Dembele's continued detention violates the Fifth Amendment because he is not likely to be removed in the reasonably foreseeable future. This finding, of course, begs the question whether *Zadvydas* actually applies, and that question is complicated both by Dembele's refusal to board a removal flight and the BIA's stay of his removal a week later.

### 1.  *Zadvydas*'s Concern for Indefinite Detention Applies to § 1231(a)(1)(C)

7

Section 1231(a)(1)(C) directs that the "removal period *shall be extended* beyond a period of 90 days" if the noncitizen "acts to prevent" his own removal. The Court assumes that Dembele's refusal to board a removal flight in May 2025 was an act to prevent his own removal as described in § 1231(a)(1)(C).

Like § 1231(a)(6), the plain language of § 1231(a)(1)(C) places no limitation on the government's detention authority. The removal period—and therefore the detention authorized during the removal period—"shall be extended" for an unspecified period. Under both §1231(a)(6) and § 1231(a)(1)(C), "[c]ivil confinement . . . can be reasonably read to be indefinite." *Glushchenko v. U.S. Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 707 (S.D. Tex. 2021).

"A statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690. The text of § 1231(a)(1)(C) permits indefinite detention to precisely the same degree as the text of § 1231(a)(6). Therefore, this Court joins the *Glushchenko* court in finding that the due process considerations animating *Zadvydas* apply as well to noncitizens detained under § 1231(a)(1)(C) as to those detained under § 1231(a)(6).

### 2.  *Pelich*: When Obstruction Causes Indefinite Detention

*Pelich v. I.N.S.*, 329 F.3d 1057 (9th Cir. 2003), is frequently cited in discussions of *Zadvydas*'s interaction with § 1231(a)(1)(C). *Pelich* concerned a noncitizen who refused to cooperate in obtaining travel documents and therefore could not be removed. The Ninth Circuit held "that an alien cannot assert a viable constitutional claim when his indefinite detention is due to his failure to cooperate with the [government's] efforts to remove him." *Id.* at 1061.

But *Pelich* is distinguishable from this case for obvious reasons. Pelich remained in the United States because he could not obtain travel documents, and he could not obtain travel documents exclusively due to his conduct. It is true that Dembele prevented his own removal by

8

refusing to board a plane, but that is not the reason—or at least not the exclusive reason—he remains in the United States. A week after Dembele refused to board his removal flight, the BIA granted his motion to stay his removal. If the government attempted to remove him now, it could not do so lawfully. Therefore, since May 24, 2025, Dembele's removal has not been precluded "due to his failure to cooperate" with the government's removal efforts, *Pelich*, 329 F.3d at 1061, but because the government has elected to stay his removal.

### 3. *Diouf*: Restarting the Removal Period

Six years after *Pelich*, the Ninth Circuit formally recognized that obstruction of removal makes *Zadvydas* inapplicable to noncitizens detained under § 1231(a)(1)(C). *Diouf v. Mukasey*, 542 F.3d 1222, 1226 (9th Cir. 2008), involved a noncitizen who, like Dembele, refused to depart the United States one time. Thereafter, the government made no documented attempts to remove him. The Ninth Circuit explicitly distinguished between the case of a noncitizen (like Pelich) whose ongoing obstruction continues to prevent his removal and a noncitizen (like Dembele or Diouf) who prevented removal on one occasion. In the latter case, the Ninth Circuit held, § 1231(a)(1)(C) must be read as restarting the 90-day removal period "following the latest date of documented obstruction." *Id.* at 1231. After the restarted removal period concludes, the noncitizen's detention is governed by § 1231(a)(6)—and *Zadvydas*—rather than § 1231(a)(1)(C).

Applying *Diouf*, and construing the facts liberally in the government's favor, Dembele obstructed his removal one time, on May 12, 2025, when he refused to board a plane. At the latest, Dembele's obstruction ceased to be the cause of his non-removal by May 20, when the BIA stayed his removal. If the 90-day removal period restarted on May 20, it ended in August 2025. Therefore, by the time Dembele filed his habeas petition on March 4, 2026, *Zadvydas*'s six-month period of

presumptively reasonable detention was over, even if the removal period restarted consistent with *Diouf*.

### 4. Conclusion: *Zadvydas* Entitles Dembele to Release

One way or the other, *Zadvydas*'s due process considerations apply to this case and entitle Dembele to release from detention. If the correct analysis comes from the *Pelich-Diouf* line of cases, then Dembele's restarted removal period ended more than six months ago, and his detention is now governed by § 1231(a)(6) and *Zadvydas*. If the *Pelich-Diouf* line of cases does not apply, then § 1231(a)(1)(C) authorizes indefinite detention if it is read literally, and it must be subject to *Zadvydas*'s implicit due process constraints in order to avoid a constitutional problem. *Glushchenko*, 566 F. Supp. 3d at 707. In either case, Dembele has demonstrated that his removal— which has been stayed by the BIA—is not likely to occur in the reasonably foreseeable future, and the government has not carried its burden of rebutting that showing with evidence that the stay is likely to be lifted any time soon. Dembele's continued detention therefore violates the Constitution and laws of the United States.

### III. Conclusion

The Petition for Writ of Habeas Corpus is **GRANTED**. The respondents will have **through March 25, 2026**, to notify the court that Dembele has been released from detention. Dembele's request for attorney's fees and costs, (Dkt. 1 at 10), is **DENIED without prejudice** and may be renewed in a proper motion. Fed. R. Civ. P. 54(d); S.D. Ind. L.R. 54-1.

**IT IS SO ORDERED.**

Date: 3/20/2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Ricardo Simmonds
Lighthouse Legal LLC
ricardo@lighthouseindy.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov